## Jones, Administrator v. Jones, et al.

(Decided May 22, 1925.)

### Appeal from Simpson Circuit Court.

1. Executors and Administrators—Whether Express Contract Existed to Pay for Board, Lodging, and Nursing Held for Jury.—Whether express contract existed between plaintiffs and deceased to pay for board, lodging, and nursing held for jury.

2. Executors and Administrators—Evidence Held to Justify Conclusion by Jury that Claim for Services to Deceased was Paid by Him.—Evidence, though inconclusive, held to justify conclusion by jury that claim for board, lodging, and nursing of deceased was paid by him.

3. Executors and Administrators—Instruction Held Erroneous as Furnishing no Guide to Fix Amount of Recovery for Board and Lodging Given Deceased.—In action against estate to recover for board and lodging furnished deceased, where it was in issue whether the board and lodging was worth $5.00 per week, as claimed by plaintiffs, or not in excess of $2.50, as claimed by defendant administrator, an instruction held erroneous as furnishing no guide or criterion for the jury to fix amount of recovery.

4. Trial—Instruction Authorizing Recovery for Nursing for Whole Period Alleged Held Erroneous, in View of Evidence.—Instruction authorizing recovery for nursing deceased for whole period during which he boarded with claimant held erroneous, where evidence showed such services were only required occasionally.

5. Executors and Administrators—Instruction on Limitation should State Period for which no Recovery Allowable when Evidence Undisputed.—In action against administrator to recover for services rendered deceased over a long period of time, where evidence as to defense of limitations was undisputed, an instruction on that issue should have explicitly stated how much of the claim sued on was barred and directed jury not to find anything for plaintiffs during that period.

6. Executors and Administrators—Verdict of $5,000.00 for Services, Consisting of Board, Lodging, and Nursing, Furnished Deceased Held Excessive.—Verdict of $5,000.00 for services, consisting of board, lodging, and nursing, furnished deceased held excessive, as covering periods of time when no services were required or rendered.

G. T. FINN and G. D. MILLIKEN for appellant.

C. E. EVANS and JOHN S. MILLIKEN for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

J. F. Walton died in April, 1920, intestate, and a resident of Simpson county. At the time of his death he was temporarily in Florida for the benefit of his health.

He was seventy-five or eighty years of age, and for some years had lived in the home of appellee Jones and wife, the latter being a niece of his former wife. His only heir at law was a son who had lived for a number of years in the state of Texas.

Something more than a year after his death, and after the qualification of his administrator, appellees Jones and wife filed a claim against his estate aggregating $5,975.00. The claim is in two items, one for board and lodging for 239 weeks, beginning April 23. 1915, and ending December 1, 1919, at $5.00 per week, amounting to $1,195.00; the other is for nursing, caring for, looking after and furnishing to him bedding, at the price of $20.00 per week, aggregating $4,780.00.

The personal representative failing or refusing to pay the claim this suit resulted. The answer is in three paragraphs; in the first it is denied that plaintiffs furnished the decedent board and lodging during the period named for any number of weeks exceeding 200 weeks, or that the contract price thereof was $5.00 per week or any other sum in excess of $2.50, and it is denied that during that period, or any other period of time, the plaintiffs nursed, cared for or looked after, or furnished

bedding to decedent at the rate of $20.00 per week, or any rate.

In a second paragraph defendant pleads and relies upon the five-year statute of limitations against a part of the claim, and in the third paragraph payment is pleaded.

The affirmative pleas in the answer were put in issue by a reply, and on a trial there was a verdict for the plaintiff for $5,000.00, and the court declining to grant a new trial this appeal is prosecuted.

The evidence discloses that decedent sold his farm, and about 1914 or 1915 went to the home of appellees and there remained under an agreement with them by which he was to pay for his keep, but while there was, as shown by one witness, an express contract to pay therefor, no contract price was fixed. It is disclosed that he was a man of frugal habits, and at certain stated periods was quite ill for a time with a kidney or bladder trouble, and at such times for periods of two or three weeks required special attention, and imposed extra menial labor upon Mr. and Mrs. Jones in caring for the room he occupied and the bedding. It is disclosed, however, that except at such times he cared for himself and required no particular attention from them, and upon at least one occasion he employed and paid for the services of a neighbor who gave him special attention. It is undenied in the evidence that for two winters before the winter of 1919-1920 he spent at least a part of his time in Florida, and that during that winter (1919-1920) he left about the first of December, 1919, and remained there until his death in April, 1920. The evidence rather convincingly shows that during the periods when his complaint was giving him special trouble he required extra attention, but except during such periods he was amply able to and did take care of and look after himself, and required no such special attention. It is disclosed that during his stay at appellees' home he went some two or three times a year to visit among old friends and acquaintances in addition to trips to Florida; and at such times he always appeared to be able to look after and care for himself without assistance from others. The evidence discloses by the persons with whom he stayed in Florida that except for the last week or ten days in his final illness he required no attention from them.

However, it does appear that when he did have these occasional spells he could not control his urine and could

not at such times use for himself the catheter, but could use the instrument himself except during these severe spells. The evidence shows that at other times he visited his friends, went to church, to the bank, and to other places where he desired to go, as would be expected of a normal man of his age.

The express contract to pay for these services is shown by only one witness, and he a nephew of appellee Jones. While his evidence shows a promise to "pay them well for keeping him," it does not disclose any contract price.

The only questions which we deem it necessary to discuss are the patent errors in two instructions, and the manifestly excessive amount of the verdict.

The first instruction was as follows:

"The court instructs the jury that if they shall believe from the evidence that the plaintiffs, Lod Jones and his wife, Ella Jones, entered into or had a contract with the deceased, James F. Walton, whereby plaintiffs were to furnish board and lodging for said Walton, and shall believe that said Walton agreed to pay plaintiffs for the services rendered by them, if any were rendered, and shall further believe from the evidence that plaintiffs furnished board and lodging to said Walton for a period of 239 weeks, or shall further believe from the evidence that during said period of time that plaintiffs nursed and cared for said Walton at his instance and request, and that he agreed to pay for same, then the jury will find for plaintiffs for said board and lodging or for the nursing and care of said Walton, the whole recovery, not to exceed $5,975, amount sued for by plaintiffs."

Clearly the instruction was erroneous. Under the pleadings the value of the board and lodging was in issue, the plaintiffs alleging that it was worth $5.00 per week and defendant alleging it was not worth in excess of $2.50 per week. The answer also denies that the extra services for nursing, etc., were rendered to the decedent for any part of the time at the price of $20.00 per week, or any other sum per week.

In the light of the evidence the jury should have been instructed only that if they believed from the evidence that plaintiffs furnished to decedent under an

express contract board and lodging for any part of the time between April, 1915, and December, 1919, they should find for the plaintiffs the reasonable value of the board and lodging so furnished during that period, not exceeding $5.00 per week nor less than $2.50 per week; and that if they believed from the evidence that during any period of the time mentioned the plaintiffs nursed and cared for the decedent under such express contract, then they should find for plaintiffs for such nursing and care at the rate of not exceeding $20.00 per week during such times as such nursing and care were given.

While the evidence of the terms of the express contract is, as we have seen, somewhat meagre, and wholly fails to fix any contract price, we are unwilling to say that it did not authorize the submission of that issue to the jury. Likewise the evidence for defendant on the issue of payment was inconclusive, but did disclose a state of case which would have justified the jury in reaching the conclusion that the claim had been paid.

The fact that for two successive years just before going south he wrote checks for $28.00 and $24.00, respectively, "for board" is very suggestive, if not wholly convincing, that in each instance he was paying his board up to that time. He had in bank at the time of his death nearly $4,000.00 in cash, and ten or twelve thousand dollars in good notes, and there is nothing to show that he did not have that much money and that much in notes at all times during those years. The plaintiffs are not shown to have been in such affluent circumstances as that they might conveniently wait during all these years for their pay, and he was not in such financial straits as that he might ask them to wait. These circumstances and conditions strongly suggest to the inquiring mind why such payments were postponed during this long period, when the plaintiffs were under no moral obligation to take or retain him in their home, nor any reason shown or given why they should have tolerated such long postponement. A heavy odor of improbability persistently hangs about the whole transaction.

The quoted instruction furnishes to the jury no guide or criterion by which it may fix the amount of the plaintiffs' recovery, and is clearly defective in authorizing a recovery for extra services during the whole period, when the evidence discloses that only at certain times were the extra services required. Payne v. Combs, 198 Ky. 749; Southern R. R. Co. v. Ky. Grocery Co., 166 Ky.

94; Weil v. Hagan, 161 Ky. 292; Benge's Admr. v. Fouts, 163 Ky. 809.

Likewise the instruction on limitation was erroneous; it should have explicitly stated to the jury under the evidence and state of the record exactly how much of the claim sued upon was barred by the statute of limitations, and directed the jury not to find anything for the plaintiffs during that period. The evidence on this question is uncontradicted.

We likewise have no difficulty in finding that the recovery is excessive, for it is apparently based upon a verdict which finds approximately $20.00 a week for extra services during a long period of time when the evidence discloses that only at certain times during that period were such extra services required or rendered. Not only so, it probably embraces not only a finding for board and lodging, but for the rendition of such extra services during a long series of weeks at which time the decedent was shown to have been in the state of Florida.

For these reasons we find that the recovery is excessive, particularly as to the extra services claimed.

The judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.